REYNOLDS v. WHITE et al.

(Supreme Court, Appellate Division, Second Department.　March 17, 1911.)

1. VENDOR AND PURCHASER (§ 341*)—TITLE—MARKETABILITY—BURDEN OF PROOF.

A purchaser who rejects a title because unmarketable and who sues for the money paid has the burden of proving unmarketability.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 1012; Dec. Dig. § 341.*]

2. VENDOR AND PURCHASER (§ 112*)—DEFECTIVE TITLE—EFFECT.

Where the price fixed in a contract of sale of real estate was a sum per acre as the acreage was determined by a survey, which was subsequently made, a defect in the title of an insignificant part did not justify the purchaser in rejecting the entire title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Dec. Dig. § 112.*]

3. VENDOR AND PURCHASER (§ 130*)—UNMARKETABLE TITLE—EVIDENCE.

Where, in an action by a purchaser for payments made for land because of unmarketability of the title, counsel for the vendor conceded in open court that the title to two acres was based on a quitclaim deed by a grantor not shown to have acquired any title, the court could not require the purchaser to rely on another apparently perfect title to the two acres through the deed of another.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 245, 246; Dec. Dig. § 130.*]

4. ADVERSE POSSESSION (§ 14*)—ACTS CONSTITUTING POSSESSION.

A tract included in a quitclaim deed executed in 1871 was rough woodland. During part of the time up to 1906, the tract had been inclosed by a fence, but for a long time the fence had been removed from its westerly part. There was a ditch along the westerly boundary. There was no evidence that the tract had been in any way cultivated or used for the supply of fuel or fence timber, or for any purpose of husbandry. *Held*, not to show title by adverse possession under Code Civ. Proc. §§ 369, 370, defining adverse possession by a person claiming title.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 77–81; Dec. Dig. § 14.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

128 N.Y.S.—34

5. VENDOR AND PURCHASER (§ 334*)—UNMARKETABILITY OF TITLE—EFFECT.

Where the market value of a parcel to which the vendor had good title was substantially injured for purposes of development and sale in consequence of a defect in the title of another parcel to be conveyed by the vendor under the contract of sale, the purchaser need not carry out his contract, but he may recover back the earnest money paid, with interest, and the reasonable expenses incurred in examining the title.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. §§ 959–980; Dec. Dig. § 334.*]

Appeal from Trial Term, Nassau County.

Action by William H. Reynolds against William De Courcy White and others. From a judgment for plaintiff and from an order denying a new trial, defendants appeal. Affirmed.

See, also 134 App. Div. 248, 118 N. Y. Supp. 979.

Argued before JENKS, P. J., and BURR, THOMAS, CARR, and WOODWARD, JJ.

Eliphalet W. Tyler, for the appellants.

Charles C. Clark, for the respondent.

BURR, J. On May 12, 1906, defendants entered into a contract with Joseph E. Humbert, by which they agreed to sell, and he agreed to purchase, a tract of land near the village of Rockville Centre, known as Reservoir Park and Lynbrook Driving Park, and more particularly described in said contract as the property conveyed by three several deeds, one of which was referred to as a deed made by Richard Bedell and wife to William De Courcy White, dated September 17, 1883, and recorded September 20th in the same year. This contract was assigned by Humbert to plaintiff, and the closing of the title was from time to time adjourned until November 28, 1906. On that day plaintiff refused to complete his purchase, alleging that there was a defect in defendant's title to a part of the premises. Thereafter he brought this action to recover the earnest money and the expenses of examining the title, and from a judgment in his favor defendants appeal.

The burden of showing that the title was unmarketable is upon plaintiff. Reynolds v. White, 134 App. Div. 248, 118 N. Y. Supp. 979. The alleged defect was in connection with a part of the land described in the deed from Bedell to White, above referred to. This deed appeared to describe three pieces of land. The second parcel lay to the east of the highway known as Ocean avenue, and was excepted from the contract, and need not be again referred to. The first parcel was situated on the westerly side of said highway and was irregular in form and was described by metes and bounds; the distance being measured in feet and fractions of a foot, and the angles being measured by degrees and minutes of a circle.

That which appeared to be a third separate and distinct parcel was thus described:

"All that certain piece or parcel of sprout woodland situate in said town, county and state, and lying west of the residence of Robert M. Carman, bounded and described as follows, westerly by land of Henry Hewlett, southerly, easterly and northerly by land of Joseph Pearsall, containing by estimation two acres be the same more or less."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In declining to carry out the contract, plaintiff contended that the only record title to these two acres of land consisted of a quitclaim deed from Oliver S. Denton to Richard Bedell, dated February 21, 1876, and duly recorded, and a quitclaim deed from Zacheriah Abrams to Oliver S. Denton, dated September 4, 1871, and duly recorded. This latter deed contained a recital that the premises were the same as those conveyed by a warranty deed bearing date the 21st day of February, 1828, made and executed by Isaac Pearsall and Nancy, his wife, to Zacheriah Abrams. This deed was not recorded, nor was the original produced, at the time when the contract was to be closed. There was some evidence given that there were outstanding mortgages upon a part of the property, and an unpaid tax; but it appears that these liens could have been removed, and the trial court did not find, nor would the evidence warrant a finding, that these incumbrances were assigned as objections to the title or as reasons for plaintiff's refusal to complete.

The doubt about the title arose from the inability of plaintiff's examiners to locate the plot referred to as the "two acres of sprout woodland." When the title was rejected, they seem to have supposed that this two-acre piece was not included within the boundaries of the parcel previously specifically described, but was separate and distinct therefrom.

Upon the second trial, it was established by old surveys and the testimony of witnesses, beyond dispute, that substantially the whole of the parcel referred to in the "two-acre" description was already included in the large piece specifically described, the title to which was acquired by Bedell from the executors of Pearsall in 1872. If there is any part thereof which is not thus included, it is so small and insignificant that, even if the title through quitclaim deeds was defective, it would be no ground for rejecting the entire title, as the price was fixed in the contract at a certain sum per acre, the amount of the acreage to be determined by an actual survey, which was subsequently made.

When the case was here before (Reynolds v. White, supra), we said:

"There was no evidence offered that the quitclaim deed was essential to the title of Bedell, whose chain appears as from the executors of G. Pearsall by their said conveyance of 1872. * * * It may be that the plaintiff could prove that the quitclaim deed was essential, and in that event another question might arise, but we do not find that he did so."

It would appear now as if there were two chains of title to this two-acre piece, one of them derived through the executors of Pearsall, and the other through the quitclaim deeds. As to the whole of the parcel derived from the Pearsall executors, there is no evidence to establish that the defendants did not have both a good and marketable title, and if it were not for a concession of counsel for the defendants, made upon the trial, we should suppose that defendants could rely upon this title, and that it could be no objection to the same that it was fortified and strengthened by quitclaim deeds from persons who, according to plaintiff's contention, had no title to that part thereof re-

ferred to as the "two-acre piece." But, during the progress of the trial, after it had been definitely conceded that these two acres lay within the northwest corner of the parcel derived from the Pearsall executors, and referred to as the "Bedell portion 1–A," this occurred:

"The Court: And these two acres—it is conceded the two acres referred to are those under the quitclaim deed of which there is no prior title? Plaintiff's Counsel: Yes. The Court: These particular two acres. That is conceded, 1 understand, by all the parties. There is no prior record title to the two acres than the quitclaim deed? Defendant's Counsel: That is my understanding. Plaintiff's Counsel: That is right. The Court: That was the condition that confronted the parties at the time of the closing? Plaintiff's Counsel: Yes. The Court: That is the fact, is it? Defendant's Counsel: That is my understanding, sir; yes, sir."

In the face of this concession, we feel that we cannot rely upon that which would seem to be another and perfect title to these two acres through the Pearsall deed. It therefore would appear through this concession that the plaintiff has now shown that it is essential to defendant's title that such title as was acquired through the quitclaim deeds should be both good and marketable. If there had been in this case clear and positive evidence of actual possession under the deed made in 1871, continued down to the date when the contract was to be completed, it might be that the trial court would have been justified in holding the title to be marketable. Code of Civil Procedure, §§ 369, 370; Freedman v. Oppenheim, 187 N. Y. 101, 79 N. E. 841, 116 Am. St. Rep. 595. But the evidence in this case fails to establish this. The property was rough woodland. During a part of the time it had been surrounded by a fence; but for a long period of years prior to the date in question this fence had been removed from the westerly portion of the said two acres. It is true that there was some evidence that there was a ditch along the westerly boundary of the land; but a ditch could hardly be deemed a substantial inclosure for property of that character. There was no evidence that it had been in any way cultivated or improved, or used for the supply of fuel or fencing timber, or for any of the purposes of husbandry, or that any use whatever had been made of the premises. Under such circumstances, there remained but one question to be determined by the trial court, and that was: Did the fact that on November 28, 1906 (that being the law or closing day) there was a defective title to the two-acre plot concededly located within the 69-acre plot (the large piece), on the westerly line thereof and about midway between the northerly and southerly bounds of the 69-acre plot, affect the then market value of the remainder of the 69-acre plot in both a material and detrimental manner for the purposes of development and sale in lots or plots? This question was submitted to the jury for a special finding thereon. The jury found that such was the case, and the evidence fully warranted its conclusion.

It follows, therefore, that the plaintiff was not under obligations to carry out his contract, and that he is entitled to recover back the earnest money paid, with the interest thereon, and the reasonable expenses incurred by him in the examination of the title. As to the

amount of this, there was no dispute, and the judgment entered in favor of the plaintiff in this action for such amount must be affirmed, with costs.

All concur, except JENKS, P. J., who took no part.